# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4149

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa |
| Lynn F. Schmitz, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:   October 21, 1998

Filed:  June 25, 1999

_____

Before McMILLIAN, JOHN R. GIBSON and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.


Lynn F. Schmitz appeals from a final judgment entered in the United States District Court[1] for the Northern District of Iowa following his conditional plea of guilty to one count of unlawful possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Schmitz to ninety months imprisonment, three years of supervised release, and a special assessment of $100.00. United States v.

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

<u>Schmitz</u>, No. 2:96CR01011-001 (N.D. Iowa Nov. 20, 1997) (judgment). For reversal, Schmitz argues that the district court erred in denying his motion to suppress evidence because (1) the district court misapplied the legal standard set forth in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), in upholding the lawfulness of a search warrant and (2) the law enforcement officers who executed the search warrant exceeded the scope of the warrant in violation of his constitutional rights. <u>See</u> <u>id.</u> (July 11, 1997) (transcript of guilty plea hearing, including district court's oral order denying motion to suppress and statement of reasons) (copy in Addendum to Brief for Appellee at 13). For the reasons discussed below, we affirm.

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. Crim. P. 4(b).

## Background

On July 10, 1999, Schmitz was charged in a two-count indictment with possession of ammunition by a felon and forfeiture of the ammunition. On August 30, 1996, Schmitz moved to suppress evidence seized during the execution of a search warrant, which was obtained by law enforcement officers after Schmitz had declined a request for consent to search his home, was placed under arrest for aggravated domestic assault, and was taken to jail. In his suppression motion, Schmitz asserted that the affidavit supporting the search warrant application contained materially false information, which the affiant gave either intentionally and knowingly or with reckless disregard for the truth, thus requiring a hearing and suppression of evidence under <u>Franks v. Delaware</u>. Schmitz further asserted, as an alternative argument, that the officers used the warrant as a pretext for generalized rummaging through his home, thus exceeding the scope of their authorization and violating his Fourth Amendment rights. The government resisted Schmitz's motion to suppress, and the matter was referred to

a magistrate judge[2] for a recommended disposition. The magistrate judge held an evidentiary hearing. The affiant for the search warrant application, Deputy Sheriff Elaine Palen, among other law enforcement officers, testified for the government. Schmitz and his girlfriend, Micki Yeager, testified for the defense. The magistrate judge thereafter issued a report and recommendation. United States v. Schmitz, No. 2:96CR01011-001 (N.D. Iowa Nov. 7, 1996) (hereinafter "Report & Recommendation"). In his findings of fact, the magistrate judge reviewed the events leading up to the controverted search of Schmitz's home and made the following findings. See id. at 2-8. On May 10, 1996, an application for a warrant to search Schmitz's residence was submitted to an Iowa state court judge. Id. at 2. The warrant application contained Deputy Palen's affidavit, which stated:

> On the morning of May 10, 1996, at approximately 7:15 a.m., this affiant was traveling on Roosevelt away from Peru Road; that as I approached 1030 Roosevelt, I observed a large black newer pickup truck in the driveway; that a young woman threw something at the pickup truck; that the driver looked over his shoulder directly at the woman who was behind the vehicle and drove at her; that she avoided him and threw something at the vehicle again; that she went to the front of the vehicle; that he then put the vehicle into a forward gear and drove at her again; that she was either struck or slipped into an approximately five foot deep ditch; that she came out of the ditch with mud on her clothes; that she was wearing a white top, white pants and white socks with no shoes; that the affiant not[ified] the Dubuque Police Department which responded; that they found Lynn Schmitz and Micky Yeager who resided at that residence and initially both denied any incident occurring; however, when the police returned, Mr. Schmitz admitted that he had been involved in a verbal argument with Ms. Yeager and had driven quickly backwards, but had not struck her or tried to strike her; that approximately 20 feet of fresh skid marks were evident in the driveway area; that Mr. Schmitz refused to give

---

[2]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa.

permission to police to search the residence for the clothes; that Ms. Yeager was wearing different clothes when police arrived according to what they told this affiant.

Id. at 2-3 (quoting affidavit of Elaine Palen) (copy of affidavit in Addendum to Brief for Appellee at 1). Based upon Palen's affidavit, the state court judge issued a warrant authorizing the police to search for "a dirty white top, dirty white pants, and dirty white socks; these items should have mud on them." Id. at 2.

The magistrate judge found, with respect to these early morning events of May 10, 1996, that "Elaine Palen . . . observed the truck precipitously stop and back up in Ms. Yeager's direction in [what] [Palen] believed to be a threatening manner," that "Deputy Palen again observed the truck driven in a threatening manner in [Yeager's] direction," that "Ms. Yeager went into the ditch and ultimately ran back to the house," and that "Deputy Palen observed that plaintiff's white clothes were soiled as a result." Id. at 3-4. In addition, the magistrate judge found that Palen's 911 call to the police was placed only moments before another person anonymously called the police to report that "Lenny Schmitz" had attempted to run over his girlfriend on Roosevelt Road. Palen reported that the events occurred at approximately 7:15 a.m., and the anonymous caller indicated that the events occurred at approximately 7:17 a.m. Id. at 6.

Although the magistrate judge found that Palen's testimony was "obviously inaccurate" with regard to some specific details, he nevertheless concluded:

> The court's criticism of Deputy Palen 's testimony regarding some of the details of this incident does not undermine its confidence that Deputy Palen believed that she observed an assault in progress. She was not on duty, she had her young son in the car and this could explain some of her failure to recall details. She did not know Lynn Schmitz prior to this event and the defendant has suggested no motive for the alleged

-4-

fabrication of her claim. The court does not believe it was fabricated and believes that the tape recorded call to the dispatcher from the anonymous caller provides strong, corroborative support for Ms. Palen's observations.

Id. at 6-7.

The magistrate judge further found that, shortly after obtaining the search warrant, the police went to Schmitz's home, where they found Yeager, dressed in white pants and a black shirt.[3] At the officer's request, she turned over the white pants. Id. at 7. After a period of searching, they found a pair of muddy white socks on the floor behind the door leading from the house to the garage. Id. The officers never found a muddied white shirt. Id. In the course of searching for the white shirt and socks, the police discovered marijuana in the pocket of a jacket inside a closet. Id. at 8. Based on that discovery, they obtained a second search warrant, the execution of which led to the discovery of a gun and ammunition. Id.[4]

In his conclusions of law, the magistrate judge determined that the search warrant was valid notwithstanding Schmitz's claim that it was issued in violation of Franks v. Delaware. Id. at 10. The magistrate judge also concluded that the officers' initial search did not exceed the scope of the first warrant. Id. at 10-11. The magistrate judge recommended that Schmitz's motion to suppress be denied, and the district court

---

[3]The magistrate judge also found, citing certain consistent facts and presumably based in part on an assessment of witness credibility, that, although Yeager was wearing a black shirt at the time the officers arrived to execute the warrant, she had been wearing a white shirt at the time Palen observed her on Roosevelt Road earlier that morning. Report & Recommendation at 7.

[4]According to the government, the muddy socks were not discovered until the execution of the second search warrant, which was issued after the officers discovered the marijuana. Brief for Appellee at 17.

adopted that recommendation. (Hereinafter the magistrate judge's factual findings and legal conclusions are attributed to the district court.[5]) Schmitz thereafter entered a conditional plea of guilty to count one of the indictment, for being a felon in possession of ammunition, while reserving the right to withdraw his plea if he were to succeed in appealing the denial of his motion to suppress. Following his sentencing, Schmitz timely appealed.

## Discussion

In reviewing the district court's denial of Schmitz's motion to suppress, our role is "to ensure that the evidence as a whole provides a substantial basis for finding probable cause for the issuance of the warrant." United States v. Buchanan, 167 F.3d 1207, 1209 (8th Cir. 1999) (citing Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam); United States v. Day, 949 F.2d 973, 977 (8th Cir. 1991)). We review the district court's findings of fact for clear error and its conclusions of law based upon those facts *de novo*. See United States v. Beatty, 170 F.3d 811, 813 (8th Cir. 1999) (quoting United States v. Glenn, 152 F.3d 1047, 1048 (8th Cir. 1998)); United States v. Buchanan, 167 F.3d at 1209.

---

[5]Schmitz's arguments on appeal specifically and directly challenge the magistrate judge's Report & Recommendation, not the district court's separate statement of reasons for denying the motion to suppress. See United States v. Schmitz, No. 2:96CR01011-001 (N.D. Iowa July 11, 1997) (transcript of guilty plea hearing, including district court's oral order denying motion to suppress and statement of reasons) (copy in Addendum to Brief for Appellee at 13). Although the district court did provide its own statement of reasons, those reasons closely followed the magistrate judge's analysis and was prefaced by the statement that the district court was "deny[ing] the motion to suppress essentially for the reasons set forth in [the magistrate judge's] order." Id., transcript at 3, lines 10-16 (Addendum to Brief for Appellee at 15).

*Franks v. Delaware*

Schmitz first argues that the district court applied an incorrect legal standard for affording relief under Franks v. Delaware and, as a consequence, erroneously denied his motion to suppress.  Specifically, Schmitz argues:

> The gravamen of Appellant's argument is that the district court utilized the wrong legal test in its analysis.  The court below characterized "the central question in this case [as] whether Elaine Palen actually observed the matters set forth in her affidavit, and appropriately concluded that a domestic assault was taking place."

Brief for Appellant at 6.  Schmitz further argues that the magistrate judge should instead have determined:

> (1) whether there were false statements in Deputy Palen's affidavit, and if so (2) whether those statements were knowingly or intentionally made, or made with a reckless disregard for the truth, and finally, if intentionally or recklessly made, (3) whether after excising the false or incorrect statements, the affidavit's remaining statements provided enough information to establish probable cause nonetheless.

Id.

Schmitz's argument is conceptually flawed.  To begin, Schmitz has misquoted the language of the district court and has taken the district court's words out of context.  As a result, he has misunderstood and misrepresented the district court's rationale.  The district court's actual statement, in its full context, is as follows:

> Pursuant to Franks v. Delaware, 438 U.S. 154 (1978), the affidavit must contain statements that are truthful.  However:

-7-

This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct. For probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that some times must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

Franks v. Delaware, supra, at 165.

Thus, the central *factual* question in this case is whether Elaine Palen observed the matters set forth in her affidavit, and appropriately concluded that a domestic assault was taking place.

*If material information in the affidavit is known by the affiant to be false or if she had no reasonable basis for believing it, then it is not objectively reasonable for her to use to it obtain a warrant.* Burk v. Beene, 948 F.2d 489, 495 (8th Cir. 1991). However, Franks is limited to cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant; the rule does not apply to negligent misrepresentations or omissions. Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994).

Report & Recommendation at 8-9 (emphasis added).

We find no error in the district court's statement of the law, nor do we disagree with the district court's clear meaning that, in determining whether statements in Palen's affidavit were truthful in the sense of being "believed or appropriately accepted by [Palen] as true," it is necessary to determine as *factual* matters, whether Palen actually observed the events she reported in her affidavit and, if so, whether she "appropriately concluded" that Schmitz had assaulted Yeager by driving his truck at her. If Palen never saw what she reported in her affidavit, then her affidavit would have contained false statements; as Schmitz himself contends, the Franks v. Delaware inquiry requires

-8-

an initial determination of "whether there were false statements in Deputy Palen's affidavit."  Brief for Appellant at 6 (citing Franks v. Delaware, 438 U.S. at 165).  If Palen lacked a reasonable basis for her conclusion that an assault had occurred, then her statement to that effect might have been an intentional lie or the result of reckless disregard for the truth; again, the district court's reasoning is entirely consistent with Schmitz's own argument that, under Franks v. Delaware, if statements in the affidavit were false, then a determination must be made as to "whether those statements were knowingly or intentionally made, or made with a reckless disregard for the truth."  Id.

Schmitz further argues that the district court appears to have applied only a subjective standard to determine whether Palen recklessly disregarded the truth in stating that an assault had occurred.  See id. at 8-9.  We disagree.  First, the district court ruled out the possibility that the *material* statements in Palen's affidavit were not objectively reasonable.  See Report & Recommendation at 8 (''If material information in the affidavit is known by the affiant to be false or if she had no reasonable basis for believing it, then it is not objectively reasonable for her to use to it obtain a warrant.'') (citing Burk v. Beene, 948 F.2d at 495).  Second, the district court explicitly noted that the standard is not based upon the affiant's subjective beliefs.  See id. at 9 ("To determine whether statements are believed or appropriately accepted by the affiant as true, the court does not look to the officer's subjective beliefs as to the reasonableness of the affidavit.").  But more importantly, the district court correctly recognized that, in the context of a Franks v. Delaware inquiry, we have declined to adopt a definition of "reckless disregard" that incorporates the "subjective" versus "objective" terminology and have instead explained that

> the test for determining whether an affiant's statements were made with reckless disregard for the truth is not simply whether the affiant acknowledged that what he [or she] reported was true, but whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported.

-9-

United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995), quoted in United States v. Johnson, 78 F.3d 1258, 1262 (8th Cir. 1996). The district court expressly acknowledged that United State v. Clapp sets forth the applicable standard, see Report & Recommendation at 9, and clearly rejected the conclusion that Deputy Palen must have had serious doubts as to the truth of her statements or had obvious reasons to doubt the accuracy of the information she reported.

Finally, Schmitz argues that Palen's affidavit contains several deliberately and materially false or misleading statements and omissions. For example, Schmitz argues that Palen falsely stated that (1) Schmitz twice tried to drive over Yeager on the morning in question, (2) that Yeager was either struck or slipped into a ditch, and (3) that Yeager had mud on her clothes. Schmitz also maintains that Palen intentionally omitted the facts that, upon the officers' arrival at his home shortly after the alleged assault occurred, Yeager appeared not to be injured, she appeared to be in good spirits, and she was dressed in clean clothes. Schmitz concludes that, if the allegedly false statements were removed, and the omitted material facts inserted, Palen's affidavit would have not supported a finding of probable cause to believe that an assault had occurred and that evidence of the assault (i.e., the dirty clothing) would be found in the home.

We have reviewed the district court's findings of fact and find no clear error. As stated above, the district court found that "Elaine Palen . . . observed the truck precipitously stop and back up in Ms. Yeager's direction in [what] [Palen] believed to be a threatening manner," that "Deputy Palen again observed the truck driven in a threatening manner in [Yeager's] direction," that "Ms. Yeager went into the ditch and ultimately ran back to the house," and that "Deputy Palen observed that plaintiff's white clothes were soiled as a result." Id. at 3-4. Thus, assuming those facts to be true, the statements in Palen's affidavit challenged by Schmitz are not false or, at the very least, not deliberately false under the applicable legal standard. As to Schmitz's argument

based on alleged factual omissions, we note that Palen did state in her affidavit that "Ms. Yeager was wearing different clothes when police arrived according to what they told this affiant." See id. at 3 (quoting affidavit). The other alleged omissions regarding Yeager's appearance when the officers first came to the house (i.e., that she lacked any apparent injuries, that she appeared in good spirits, and that her clothes were clean) are not necessarily inconsistent with Palen's description of the early morning assault and thus were not material to the question of whether probable cause existed to search for evidence of that alleged assault. In sum, Schmitz's argument based upon alleged material falsehoods and omissions is without merit. Accordingly, we need not consider whether probable cause would have existed if the affidavit were modified as Schmitz suggests. Reviewing the affidavit as it was submitted to the state court judge who issued the warrant, we hold that the evidence as a whole provided a substantial basis for the issuing state court judge's finding of probable cause, and no violation of Franks v. Delaware occurred.

*Scope of the warrant*

Schmitz alternatively argues that the district court should have granted his motion to suppress because the initial search exceeded the scope of the first search warrant. He argues that the officers used the warrant authorizing them to search for specific articles of clothing as a pretext to engage in "general, exploratory rummaging" through his personal belongings, in violation of the Fourth Amendment. Brief for Appellant at 14-15 (citing Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). In support of his argument, Schmitz highlights the district court's observation that the officers' testimony about the delayed discovery of the muddy socks behind the door was "hard for the court to believe." Report & Recommendation at 10.

The district court, however, concluded that, because the officers never found Yeager's allegedly soiled white shirt, "the object of their search would not have been complete upon finding the socks." Id. The district court also concluded that the police

-11-

were "appropriately looking for [the socks and shirt] when they found marijuana in [Schmitz's] closet." Id. at 10-11. We cannot say that the district court, having heard live testimony from officers who participated in the initial search, clearly erred in finding that they were in fact still looking for the socks and shirt when the marijuana was discovered. Because it is possible that the socks or shirt could have been hidden in the jacket pocket, the officers had authority to look or reach inside the pocket. "A lawful search extends to all areas and containers in which the object of the search may be found." United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.), cert. denied, 502 U.S. 896 (1991) quoted in United States v. Weinbender, 109 F.3d 1327, 13290 (8th Cir. 1997) (affirming denial of motion to suppress pistol, parts of silencer, holster and magazine discovered and seized from behind drywall during execution of search warrant authorizing search of home for articles of clothing). Nor can we say that the officers executing the first search warrant otherwise engaged in exploratory conduct that was so unreasonable as to violate Schmitz's Fourth Amendment rights. See id. at 1329-30 ("'[T]he manner in which a warrant is executed is always subject to judicial review to ensure that it does not traverse the general Fourth Amendment proscription against unreasonableness.'") (quoting Hummel-Jones v. Strope, 25 F.3d 647, 650 (8th Cir. 1994)). In the present case, nothing was destroyed or disturbed by the officers when they searched inside the jacket pocket. In sum, we hold that the initial search did not exceed the scope of the first search warrant or otherwise violate Schmitz's Fourth Amendment rights.

## Conclusion

For the reasons stated, we hold that the district court did not err in denying Schmitz's motion to suppress. The judgment of the district court is affirmed.

-12-

A true copy.

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.