# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3515

_____

United States of America,          \*
                                        \*

          Plaintiff - Appellee,     \*
                                        \*   Appeal from the United States

          v.                   \*   District Court for the
                                        \*   District of South Dakota.

Steve Buchanan,              \*
                                        \*

          Defendant - Appellant.   \*

_____

Submitted: June 11, 2009
Filed: July 27, 2009

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Steve Buchanan of one count of attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Prior to trial, the district court[1] denied Buchanan's motion to suppress certain evidence. Buchanan appeals his conviction, arguing that the district court erred in denying his motion to suppress because the affidavit supporting the warrant failed to establish the

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota , deceased , June 11, 2009,adopting the Report and Recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

reliability or credibility of the two informants and misrepresented the statements Buchanan had made in a recorded telephone call. Buchanan also claims that the district court's jury instructions constructively amended the Indictment by omitting the word "attempt" from an instruction, that the Indictment failed to state an offense because it did not specifically cite the attempt statute, and that there was an impermissible variance between the Indictment and the proof at trial. We affirm.

I.    Background

On February 13, 2006, the South Dakota Division of Criminal Investigation received an unsolicited phone call concerning alleged drug activity in Custer, South Dakota. The call was referred to Agent Lyle Tolsma who did not know and had not had any previous contact with the caller. The caller, whom Tolsma deemed a "source of information" ("SOI"), identified herself by first name, indicated that she had been to Buchanan's house three days earlier, and alleged that Buchanan had offered her methamphetamine. The SOI also alleged a second person—a woman Tolsma later identified as a confidential informant ("CI")—was involved in manufacturing methamphetamine with Buchanan.

During the call, the SOI informed Tolsma she was familiar with the appearance of methamphetamine and had been around it several times. The SOI described seeing approximately half of a gram of crystal methamphetamine on an aluminum smoking apparatus at Buchanan's house and stated that she was forced to leave the house because of the strong chemical odor. Tolsma testified that methamphetamine manufacturing produces a noticeable smell which, in some cases, can be detected a block away.

Around noon on February 14, 2006, Tolsma, joined by Agent Steve Ardis, conducted a "knock and talk" at Buchanan's home to investigate the SOI's allegations. Buchanan refused to let the agents into his house, claiming that it was messy.

Buchanan made no incriminating statements, and Tolsma testified that he smelled no odor indicative of methamphetamine manufacturing.

After speaking with Buchanan, Agents Tolsma and Ardis went to the CI's house to conduct another knock and talk. They told the CI that they were investigating allegations that she was involved in manufacturing methamphetamine with Buchanan. The CI confirmed that Buchanan was making methamphetamine and that, since October 2005, she had provided him approximately fifty packets of pseudoephedrine, a drug used to produce methamphetamine. The CI indicated that she had received methamphetamine from Buchanan in exchange for the pseudoephedrine. She also stated that she had smoked methamphetamine with Buchanan three days prior and that she had last seen Buchanan when she delivered pseudoephedrine to him the previous night. The CI also itemized objects Buchanan was using to produce the drug in his home.

Tolsma and Ardis told the CI that if she cooperated in their investigation they would speak to the prosecutor and that her cooperation would "go a long ways" toward helping her. The CI then agreed to conduct a recorded phone call with Buchanan, which they conducted that same day.

During the recorded phone conversation, Buchanan cautioned the CI of the agents' visit to his house and commented that state investigators were "probably listening in." Buchanan and the CI then engaged in a discussion of who might have informed law enforcement that he was manufacturing methamphetamine. Later in the conversation, Buchanan stated, "[T]here's a bunch of stupid [expletive] people around that you know, they get in trouble and then they try and get us in trouble . . . . so hell, I'm not doing anything wrong." The CI asked Buchanan, "Do you think you are ok?" Buchanan replied, "Yeah, yeah, yeah, like I said you know, hey. It is scary but like I said, I ain't done nothing so I ain't worrying about it but I do have to clean up my garbage cause if they come into my house and bunch of people like that . . . ."

Buchanan told the CI that he had refused to let the agents into his house and commented, "I gotta clean up my you know, key ends, and garbage and stuff I got laying all over my house and stuff you know and make it look a little more presentable in case somebody comes in. I'd hate to, you know." At one point, Buchanan and the CI engaged in an indirect discussion about the whereabouts of an unnamed item. The CI asked, "[W]ell what about me?" Buchanan replied, "Don't worry about that, it's gone." He later stated, "Yeah, it's gone. You know what I mean, you can't piss around and stuff so . . . I imagine they are probably trying to get a warrant and all this [expletive] right now so . . . ." Later the CI asked directly, "And where did you put it?" Buchanan replied "I haven't you know, time to get rid . . . ." The CI interjected, "I know, but where?" Buchanan replied, "It ain't at your place so I don't know . . . ."

Approximately a half hour after the call, law-enforcement agents, including Agent Tolsma, entered Buchanan's house and secured the residence to ensure no evidence was destroyed or removed. Tolsma then prepared an application and affidavit in support of a search warrant and read them over the phone to a state magistrate. Tolsma detailed the information the SOI had conveyed, but did not tell the state magistrate that the SOI had not given her full name, that he did not know her, or that he had not had any previous contact with her. While providing details of his conversation with the CI, Tolsma failed to state that he had no previous connection to the CI. Additionally, Tolsma indicated that he had visited Buchanan, but did not state that he had been physically present both inside and outside Buchanan's house without smelling a methamphetamine odor. Tolsma characterized Buchanan's statements in the recorded phone call as follows: "Buchanan advised the CI that he . . . is currently in the process of cleaning out his residence, *referring to the clandestine equipment and chemicals*." (emphasis added). Buchanan, however, had never directly referenced the "clandestine equipment" or "chemicals" in the recorded call.

Based on Tolsma's application and affidavit, the state magistrate granted a search warrant, and a subsequent search revealed many incriminating items. Buchanan was then indicted for attempting to manufacture methamphetamine. The Indictment read:

> On or about February, 2006, at Custer, in the District of South Dakota, the defendant, Steve Buchanan, did knowingly and intentionally attempt to manufacture five grams or more of actual methamphetamine, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

The Indictment, however, did not include a statutory reference to 21 U.S.C. § 846, which criminalizes the attempt to manufacture a controlled substance. See 21 U.S.C. § 846.

Prior to trial, Buchanan filed a motion to suppress the evidence obtained during the search. A magistrate judge held a Franks hearing to determine the validity of the search warrant and issued a report and recommendation that the district court deny Buchanan's motion. See Franks v. Delaware, 438 U.S. 154 (1978). The district court adopted the report and recommendation and denied Buchanan's motion to suppress.

At trial, the district court's preliminary jury instructions informed the jury that Buchanan was charged "with the crime of attempting to manufacture [methamphetamine]." The final jury instructions repeated that charge in instructions five and eight. In instruction six, however, the district court stated that "the indictment charges the defendant with *manufacturing a controlled substance*." (emphasis added). Instruction six did not include the word "attempt" but continued to describe § 846 and told jurors that § 846 "provides that 'any person who attempts . . . to commit any offense defined in this subchapter [which includes 21 U.S.C. § 841(a)(1)] shall be subject to the same penalties as those prescribed for the offense.'" (quoting 21 U.S.C. § 846). The court also instructed the jury as to the

-5-

elements of an attempt-to-manufacture charge and explained the workings of those elements in instruction seven.

While the Indictment alleged a conspiracy "[o]n or about February 2006," the Government introduced evidence dating back to the spring of 2005 and established that Buchanan had expressed interest in learning to manufacture methamphetamine and had sought instruction from books and friends. Buchanan did not object to the introduction of this evidence. At the close of evidence, however, he made a Rule 29 motion for a judgment of acquittal, arguing that he had been prejudiced by an impermissible variance between the indictment and the facts established at trial. See Fed. R. Crim. P. 29. The district court denied Buchanan's motion.

Ultimately, the jury convicted Buchanan of one count of attempting to manufacture methamphetamine in violation of § 841. The district court sentenced him to eighty months' imprisonment and four years' supervised release. This timely appeal followed.

II.    Motion to Suppress

Buchanan argues that the district court erred by failing to grant his motion to suppress. He claims that the SOI's and CI's allegations were hearsay and lacked corroboration, thus resulting in a lack of probable cause sufficient to support the issuance of a search warrant. He also argues that Tolsma recklessly misrepresented the nature of Buchanan's statements in his affidavit and omitted certain facts that demonstrated the absence of probable cause.

In reviewing the denial of a motion to suppress, "[w]e review the district court's factual findings for clear error and its legal determinations de novo." United States v. Lucas, 499 F.3d 769, 775 (8th Cir. 2007) (en banc), cert. denied, 128 S. Ct. 1702 (2008). Our task is "to ensure that the evidence as a whole provides a substantial basis

for finding probable cause for the issuance of the warrant." United States v. Schmitz, 181 F.3d 981, 985 (8th Cir. 1999) (quotation omitted). To successfully challenge probable cause and the validity of a warrant affidavit under Franks, 438 U.S. 154, a defendant must show by preponderant evidence that: (1) the affiant included in the affidavit "a false statement knowingly and intentionally, or with reckless disregard for the truth," and (2) "the affidavit's remaining content [was] insufficient to establish probable cause." United States v. Humphreys, 982 F.2d 254, 258 n.2 (8th Cir. 1992). "The same analysis applies to omissions of fact" in an affidavit. Id. The defendant must show that: (1) the affiant omitted facts "with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading," and (2) "the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." Id.; see also Franks, 438 U.S. at 171–72.

### A.     Probable Cause

Buchanan first claims that the CI and SOI did not provide sufficiently credible or reliable information to establish probable cause. Probable cause to search exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In evaluating probable cause, a judicial officer reviewing an application for a search warrant does not use a hypertechnical approach. Id. Rather, he or she employs a totality-of-the-circumstances analysis and makes a practical decision based on such factors as the veracity of the affidavit and the basis of knowledge of any person supplying hearsay information. Id.; see also United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) ("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.").

When reviewing a probable cause finding, the duty of this court is simply to ensure that the judicial officer that authorized the search had a "substantial basis for concluding that probable cause existed," Gates, 462 U.S. at 238–39 (quotation and

alterations omitted), and we "must accord substantial deference to the finding of an issuing judicial officer." Williams, 10 F.3d at 593 (citing Gates, 462 U.S. at 236).

Contrary to Buchanan's claim, we believe the information from the CI and SOI was sufficiently reliable to establish probable cause. In determining whether information is reliable, we have set forth various factors to consider. In United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990), we noted that there are indicia of reliability in "the richness and detail of a first hand observation." We have also recognized that "[s]tatements against the penal interest of an informant typically carry considerable weight" in establishing reliability. United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (quotation omitted). The circumstances of personal questioning may also enhance reliability and credibility. See United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when an agent meets personally with the informant to assess his credibility).

An informant may also be considered reliable if the information he or she supplies "is at least partially corroborated" by other sources. Humphreys, 982 F.2d at 259; see also Williams, 10 F.3d at 593 ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable."); cf. United States v. Wells, 223 F.3d 835, 839–40 (8th Cir. 2000) (holding that without "suitable corroboration," information from a single anonymous caller was insufficient to be reliable and establish probable cause). Probable cause can be established when information from one informant is consistent with that of a second, independent informant. See, e.g., United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (holding that an informant's information was corroborated and reliable when a second informant supplemented the information with "specific, consistent details"); see also United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986) (discouraging the technical dissection of tips for corroboration and noting the enhanced reliability of

independently consistent stories). "Even the corroboration of minor, innocent details can suffice to establish probable cause." Tyler, 238 F.3d at 1039 (quotation and citation omitted).

Here, as the district court noted, the statements provided by both the CI and the SOI were based on their firsthand observations and knowledge rather than rumor or innuendo, see Jackson, 898 F.2d at 81, and the CI provided information contrary to her own penal interest. See Tyler, 238 F.3d at 1039. Also, Agent Tolsma spoke with the CI directly and was able to personally assess her credibility. See Robertson, 39 F.3d at 893.

Finally, the information the SOI provided to Tolsma was corroborated by the information the CI provided. Like the specific and consistent details of the second informant that reciprocally corroborated the first informant in Fulgham, the CI in this case gave specific details that were consistent with the SOI's allegations. See Fulgham, 143 F.3d at 401. The SOI alleged that Buchanan possessed methamphetamine and indicated that there was a strong chemical odor at his house. The CI gave consistent details that indicated Buchanan had been manufacturing methamphetamine at his home and itemized other drug-production paraphernalia she had seen in his house. The SOI also alleged that the CI was involved in manufacturing methamphetamine with Buchanan, and the CI admitted that she had provided Buchanan with pseudoephedrine and was involved in Buchanan's manufacturing.

Buchanan argues that the reliability of the informants based on reciprocal corroboration fails because it does not meet an exaggerated level of specific verification, and he points to certain, specific allegations that were not plainly corroborated. We have addressed specific, technical contentions like this before. In Reivich we stated, "Such emphases typify the 'excessively technical dissection of informants' tips' and the 'judging [of] bits and pieces of information in isolation

against . . . artificial standards' against which the Supreme Court cautioned in Gates and Upton." Reivich, 793 F.2d at 960 (quoting Upton v. Massachusetts, 466 U.S. 727, 732 (1984)). We conclude that because the information the CI and the SOI provided was sufficiently corroborative, it was therefore reliable and sufficient to establish probable cause.

B.    Misstatements and Material Omissions in the Affidavit.

Buchanan also claims that the district court erred in denying his suppression motion because Tolsma recklessly misrepresented the nature of Buchanan's statements in Tolsma's warrant application and, thus, there was no basis for probable cause. An affidavit in support of a warrant must contain statements that are truthful. See Franks, 438 U.S. at 164–165. This, however, does not require that "every fact recited in the warrant affidavit is necessarily correct." Id. at 165. "[P]robable cause may be founded . . . upon information within the affiant's own knowledge that sometimes must be garnered hastily." Id. Therefore, the affidavit must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Id.; see also Schmitz, 181 F.3d at 984, 986–87 (holding that inaccuracies of an affiant's testimony regarding the details of an incident did not undermine probable cause where the affiant reasonably concluded that she had observed a crime in progress). The test is "whether, viewing all the evidence, the affiant must have entertained serious doubts about the truth [of his statements] or had obvious reasons to doubt the accuracy of the information." Schmitz, 181 F.3d at 986–87 (quotation omitted).

Here, the district court found no evidence that Tolsma acted untruthfully or recklessly in preparing his affidavit and application for a search warrant, and the record demonstrates that the district court's finding was not clearly erroneous. The affidavit was written in haste and spoken over the phone. Thus, as the district court recognized, "Any mistake Tolsma may have made in this regard would have been an

understandable mistake, given the context of the conversation in which Mr. Buchanan's statement was made." There is no indication in the record that Tolsma was attempting to mislead the state magistrate nor that Tolsma had "serious doubts' about his statements or had "obvious reason" to doubt the accuracy of what he was relaying.

Buchanan argues, however, that the procedure used by the state magistrate to assess probable cause in this case violated the Fourth Amendment. He claims the state magistrate adopted Tolsma's interpretation of Buchanan's statement, and in so doing, "put the cart before the horse" because he effectively allowed Tolsma to assess the presence of probable cause. This is essentially a reiteration of Buchanan's challenge to the validity of the warrant affidavit. Our Fourth Amendment inquiry requires only that the evidence as a whole provide a substantial basis for the finding of probable cause. See Gates, 462 U.S. at 238. In light of the totality of the circumstances, there were sufficient reliable facts from which the state magistrate could find that there was a "fair probability that contraband or evidence of a crime [would] be found," id. at 238, in Buchanan's house and therefore the district court did not err in denying Buchanan's motion to suppress.

III.    Indictment Claims

In addition to his motion-to-suppress claims, Buchanan raises several arguments related to his Indictment. He claims that the district court's jury instructions constructively amended the Indictment to include a charge of actual manufacturing of methamphetamine. He also claims there was an impermissible variance between the Indictment date and the proof established at trial. Finally, he claims the Indictment was insufficient because it did not cite the statute criminalizing attempt. We find Buchanan's claims unavailing.

A.    Constructive Amendment

-11-

Buchanan first claims that the district court's jury instructions constructively amended the Indictment. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner that . . . the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007), cert. denied, 128 S. Ct. 1286 (2008); United States v. Bryant, 349 F.3d 1093, 1097 (8th Cir. 2003). In order to determine whether an indictment was constructively amended, we consider whether the jury instructions, taken as a whole, "created a substantial likelihood that the defendant was convicted of an uncharged offense." Whirlwind Soldier, 499 F.3d at 870 (quotation omitted).

Here, the Indictment charged Buchanan with an "attempt to manufacture" methamphetamine. Buchanan argues that the jury instructions constructively amended the indictment because instruction six omitted the word "attempt" and instead read: "The indictment charges the defendant with manufacturing a controlled substance in violation of 21 U.S.C. § 841(a)(1)." We disagree with Buchanan. The jury instructions repeatedly included references to the charge of attempt to manufacture methamphetamine. Instruction five, for example, informed the jury that Buchanan was charged with "knowingly and intentionally attempt[ing] to manufacture . . . methamphetamine." Instruction eight stated: "[t]he crime charged in the indictment is an attempt to manufacture methamphetamine." Additionally, although the district court inadvertently omitted the word "attempt" from the beginning section of instruction six, that instruction continued to inform jurors that 21 U.S.C. § 846 "provides that [a]ny person who attempts . . . to commit any offense defined in this subchapter [which includes 21 U.S.C. § 841(a)(1)] shall be subject to the same penalties as those prescribed for the offense." More importantly, the court also instructed the jury of the elements of "attempt to manufacture" in instruction seven, and explained those elements in instruction eight.

Given these instructions, we believe that the jury instructions clearly informed the jury of the essential elements of the crime of attempting to manufacture methamphetamine. See Whirlwind Soldier, 499 F.3d at 870. The Indictment was not constructively amended by a single reference to the crime of actual manufacture where there were repeated, specific instructions identifying the crime of attempt and the elements thereof. The repeated instructions of attempt insured that there was not a substantial likelihood that the jury could convict Buchanan of actual manufacture of methamphetamine. Therefore, we reject Buchanan's constructive-amendment claim.

B.     Variance of the Indictment

Buchanan also argues that the evidence presented at trial constituted a variance of the Indictment. "A variance arises when the evidence presented proves facts that are "materially different from those alleged in the indictment." United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986). "[A] variance in the evidence affects the defendant's right to adequate notice" under the Sixth Amendment. Stuckey, 220 F.3d at 981. When a variance occurs, "[t]he charging document does not change, only the evidence against which the defendant expected to defend" varies. Id. "Whether a variance exists, and, if so, whether that variance prejudiced [the defendant] are questions of law that we review de novo." Id. at 979. Where the indictment "fully and fairly" apprises the defendant of the allegations against which he must defend, prejudice is absent and any variance is harmless error. See Begnaud, 783 F.2d at 148; see also Stuckey, 220 F.3d at 982 (holding that any variance between the indictment date and proof at trial did not result in material prejudice where time was not a material element of the criminal offense").

Here, the Indictment charged Buchanan with attempt to manufacture methamphetamine "on or about February 2006." The offense of attempt to manufacture methamphetamine did not require the Government to prove the Indictment date as an element of the crime. Rather, the charge required the

Government to prove that Buchanan carried out substantial steps toward the manufacture of methamphetamine. United States v. Beltz, 385 F.3d 1158, 1162 (8th Cir. 2004). It is exactly those steps that the Government sought to prove in its presentation of evidence. While the evidence presented at trial extended as far back as the spring of 2005, that evidence was not materially different from the allegations of the Indictment, and the Indictment fully and fairly apprised Buchanan of the charge he faced at trial. We therefore conclude that any variance that existed as a result of the evidence proffered did not materially prejudice Buchanan.

C.    Sufficiency of Indictment

Buchanan's final claim is that his Indictment failed to state an offense because it did not directly cite 21 U.S.C. § 846, which criminalizes attempt. Failure to raise a challenge to an indictment prior to trial generally constitutes a waiver. United States v. Davis, 103 F.3d 660, 674 (8th Cir. 1996). A challenge that an indictment fails to state an offense, however, may be raised at any time while the case is pending. Fed. R. Crim. P. 12(b)(3)(B); United States v. Rosnow, 9 F.3d 728, 729 (8th Cir. 1993) (per curiam). While Buchanan did not challenge the sufficiency of the Indictment prior to trial, his claim that the Indictment failed to state an offense may be considered on appeal. An indictment that is challenged after jeopardy attaches, will be upheld "unless [the indictment] is so defective that by no reasonable construction can it be said to charge the offense." United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001) (quotation omitted); Davis, 103 F.3d at 675 ("[A]n indictment that is challenged after jeopardy has attached will be liberally construed in favor of sufficiency." (quotation omitted)).

"An indictment is sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution." United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir. 1988). An indictment need not use the precise language in the statute as long as the Indictment, "by fair implication,"

alleges an offense recognized by the law.  Id.  While Federal Rule of Criminal Procedure 7(c)(1) generally requires an indictment to give the official citation of the statute or other provision of law that the defendant is alleged to have violated, Rule 7(c)(3) also states, "Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."  Fed. R. Crim. P. 7(c)(1), 7(c)(3); see also Tanksley v. United States, 321 F.2d 647, 649 (8th Cir. 1963); United States v. Williams, 129 Fed. App'x 332, 333 (8th Cir. 2005) (unpublished) ("An error in, or the omission of, a statute's citation in the body of an indictment is not grounds for a conviction's reversal unless the error or omission misleads the defendant to his prejudice.").

Buchanan has not indicated how the omission of the statutory citation misled him.  A reasonable construction of the Indictment indicates that it charged the offense of attempt to manufacture a controlled substance, and the words "did knowingly and intentionally attempt to manufacture" clearly set forth the elements of the intended charge of attempt.  We therefore hold that the indictment fairly informed Buchanan of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution for attempt to manufacture methamphetamine.  The Indictment was therefore sufficient.

III.    Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____