## STATE OF CONNECTICUT *v.* MARK THATCHER
### (AC 21849)

Schaller, Mihalakos and Bishop, Js.

Argued March 25—officially released August 13, 2002

*Christopher J. Shea*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Turcotte*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Mark Thatcher, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a).[1] On appeal, he claims that the court acted improperly in denying (1) his motion to suppress hospital test results indicating that he had a blood alcohol content of 0.222 percent at the time of operation and (2) his motion for an evidentiary hearing under *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. On February 8, 1997, the defendant, while operating his motor vehicle in Cheshire, collided with another motor vehicle at the intersection of Routes 691 and 10. Thomas Prue, an officer with the Cheshire police department, was dispatched to the scene of the accident. Upon his arrival, Prue saw ambulance personnel attending to the defendant, whose head was bleeding slightly. The windshield of the defendant's vehicle was cracked in such a way that it appeared likely that the defendant had struck his head on it during the accident. Additionally, the floor of the vehicle was littered with empty beer cans. The defendant, slurring his words, provided Prue with two versions of the events leading to the accident, and Prue smelled alcohol on

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

the defendant's breath. Thereafter, the defendant asked to be taken to the hospital.

The ambulance personnel transported the defendant to Meriden-Wallingford Hospital. There, the defendant was examined by Deanna Cherrone, an emergency room physician. Cherrone detected that the defendant smelled of alcohol and asked him whether he had consumed any alcoholic beverages. The defendant told her that he had not. Cherrone ordered two blood tests for the defendant: a complete blood count (minor trauma panel) and an alcohol level. The alcohol level revealed that the defendant's blood alcohol content was 0.222 percent, more than double the legal limit. Cherrone diagnosed the defendant as having an acute head contusion, an acute knee abrasion, interior iliac pain (hip pain) and acute alcohol intoxication. She then discharged the defendant to the custody of his wife.

On February 27, 1997, Prue applied for a warrant to search the medical records office of Meriden-Wallingford Hospital and to seize "[b]lood samples or the results of a chemical analysis of blood samples taken in the regular course of business of the hospital for Mark J. Thatcher (DOB 01-13-58) on February 8, 1997." An affidavit of Prue and Thomas Bobok, another officer with the Cheshire police department, was included in the application. The trial court issued the warrant as requested. The officers later executed the search authorized in the warrant and seized the results of the defendant's blood tests.

On April 4, 1997, the state charged the defendant with violating § 14-227a in connection with the events of February 8, 1997. The defendant entered a plea of not guilty on May 21, 1997. On January 5, 1999, the defendant filed a motion to suppress the results of the blood alcohol test. The court conducted a suppression hearing on May 1 and 25, 2000. It denied the motion on June

15, 2000. On July 17, 2000, the defendant filed another motion to suppress. In that motion, the defendant also requested an evidentiary hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154. The court denied the motion on March 2, 2001.

On April 11, 2001, the defendant entered a plea of nolo contendere conditioned on the right to appeal from the denial of his motions to suppress and for a *Franks* hearing. See General Statutes § 54-94a.[2] The court later sentenced the defendant to six months imprisonment, execution suspended with eighteen months special probation, and fined him $500. This appeal followed. Additional facts and procedural history will be presented as necessary.

I

The defendant, in the section of his brief titled, "Statement of the Issues," states that the first of two issues on appeal is "[w]hether the trial court correctly denied [his original] motion to suppress, which claimed that blood tests taken at the hospital were inadmissible against him because they were not taken for purposes of medical diagnosis and treatment and/or they were seized by agents of the state without a warrant." Later in his brief, however, in the section titled, "Argument," the defendant states: "Upon review of the relevant case law regarding [the trial court's] decision to deny the

---

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

original motion to suppress, the defendant believes the trial court's findings of fact that the defendant's blood was taken for purposes of medical diagnosis and treatment and not as a result of an agency relationship between the police and the hospital would not be overturned on appeal. . . . The defendant would concede that since the trial court's findings of fact on this issue are based almost solely on the credibility given to the state's witnesses, an appeals court could not make a finding that those findings are clearly erroneous." More recently, during oral argument before us, the defendant confirmed that he had conceded in his brief that the court had properly denied his first motion to suppress. We deem this claim abandoned and now consider the defendant's remaining claim.

## II

The defendant claims that the court acted improperly in denying his motion for a *Franks* hearing. We disagree.

The following additional procedural history is relevant to our consideration of this claim. The affidavit submitted in support of the warrant application stated as follows: "[T]he affiants, Officer Thomas Prue and Officer Thomas Bobok are regular members of the Cheshire Police Department and have been members for the past nine (9) years two (2) months/four (4) years. We are presently assigned to the Patrol Division. *That we have investigated numerous criminal and motor vehicle matters and have received specialized training in these matters. That we have personal knowledge of the facts and circumstances hereinafter related as a result of our own investigative efforts and those of brother officers who have reported their findings to us.*

"That in the town of Cheshire, on February 8, 1997, at approximately 2042 hours, the Cheshire Police Department received a report about a motor vehicle accident with injuries on Highland Avenue at 691 East-

bound entrance. Campion Ambulance service was also dispatched and responded to the scene. On arrival Officer Prue found that two vehicles had been involved in a head-on type accident. It appeared the accident occurred when a 1988 Olds Aera . . . came in contact with a 1992 Chevrolet Cavalier . . . . Both vehicles sustained extensive front end damage.

"That Officer Prue found the operator of said Olds Aera leaning against his vehicle, later identified as the registered owner, Mark Thatcher. Mr. Thatcher was in the company of Campion Ambulance personnel. This writer spoke with Thatcher to determine the events of the accident. In speaking with Thatcher this writer could smell on his breath an odor of an alcoholic beverage. This also was confirmed by ambulance personnel. Mr. Thatcher, in slurred speech, could not explain the accident. In questioning him about which direction he was traveling he stated one time he was southbound and then stated he was northbound.

"That upon inspection of his vehicle, on the passenger front floor were numerous empty beer cans. On the rear floor were more empty beer cans. When questioned about the items, Mr. Thatcher stated they were empty before the accident occurred.

"*That based on their training and experience*, the affiants have reason to believe that Mark J. Thatcher (DOB-01-13-58) was operating a motor vehicle under the influence of intoxicating liquor or drug, or both, and that the chemical analysis of a blood sample would constitute evidence of operation of a motor vehicle while under the influence of intoxicating liquor or drug, or both.

"That on or about February 8, 1997, *a blood sample of Mark J. Thatcher (DOB-01-13-58) was taken* in the regular course of business by Meriden-Wallingford Hospital for the diagnosis and treatment of an injury or

alleged injury and said sample was taken by a person licensed to practice medicine in this state, a qualified laboratory technician, an emergency technician II or a registered nurse.

"That based upon the foregoing facts and information, the affiants have probable cause to believe and do believe that competent evidence to wit: *blood samples or the results of a chemical analysis of blood samples* to establish probable cause for the arrest by warrant of such person for a violation of [General Statutes §] 14-227a will be found at Meriden-Wallingford Hospital. The affiants request the authority to seize *such samples or analysis results*." (Emphasis added.)

On May 25, 2000, the second day of the suppression hearing, the defendant's counsel elicited the following testimony from Prue on direct examination:

"Q. Were you present when Mr. Thatcher got into the ambulance?

"A. Was I present?

"Q. Yes.

"A. Certainly. I was on the scene.

"Q. Okay. Did you follow Mr. Thatcher to the hospital?

"A. No.

"Q. Did any police officer—Cheshire police officer that you know of—follow Mr. Thatcher to the hospital?

"A. No.

"Q. Did any Cheshire police officer go to the hospital later that day during the course of their investigation of this case?

"A. No.

"Q. Did you at any time after this case go to the hospital to—in any capacity with regards to your investigation of Mr. Thatcher's case?

"A. No. Not in reference to when he went to the hospital. I went to the hospital whenever I had the search warrant signed. That's the only time I ever went.

"Q. Did you speak to any of the medical personnel at the hospital on the date of this accident?

"A. No. I did not.

"Q. Did you speak to any of the medical personnel in the weeks after this accident?

"A. No. I did not.

"Q. You put in your search warrant and your arrest warrant that the blood was taken for purposes of medical diagnosis and treatment. Do you remember that?

"A. Well, if I put it in there, yes.

\* \* \*

"Q. How do you know that the blood was taken for purposes of medical evaluation and treatment?

"A. I assumed from his injuries that he sustained in the accident.

"Q. So you don't have any direct information that this blood was taken for medical purposes of diagnosis and treatment?

"A. Um.

"Q. Other than your assumption.

"A. Right.

\* \* \*

"Q. Well. [The search warrant] was signed by the judge and you told the judge that the blood was taken

for purposes of medical diagnosis and treatment and you didn't know that, right?

"A. At that point?

"Q. Right.

"A. Probably not."

On the basis of the foregoing testimony, the defendant filed a motion for a *Franks* hearing. The defendant argued that Prue had admitted at the hearing on the motion to suppress that the statement in the affidavit that the defendant's blood had been taken for medical diagnosis and treatment had been based on his assumption and not on his personal investigation or information received from other police officers. Therefore, the defendant argued, the statement in the affidavit that the affiants "have personal knowledge of the facts and circumstances hereinafter related as a result of our own investigative efforts and those of brother officers who have reported their findings to us" was false, and this false claim had been made in reckless disregard for the truth. Finally, the defendant argued that the statements regarding the basis of the officers' knowledge had provided necessary support for the court's issuance of the search warrant.[3] The court denied the motion, concluding that there still would have been probable cause to issue the warrant even if the challenged statements never were included in the affidavit. With that additional procedural history in mind, we now set forth the legal principles that guide our analysis of this claim.

"In *Franks* v. *Delaware*, supra, [438 U.S.] 155–56, the United States Supreme Court held that a defendant may challenge the truthfulness of an affidavit supporting a search warrant, provided the defendant has made a

---

[3] We note that the defendant does not contest the veracity of the statement in the affidavit that his blood was drawn at the Meriden-Wallingford Hospital by medical personnel for the diagnosis and treatment of an injury.

'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . .' If this statement is necessary to the finding of probable cause, 'the Fourth Amendment requires that a hearing be held at the defendant's request.' Id. The court stated also that '[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. . . . The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any governmental informant.' Id., 171." *State* v. *Ruscoe*, 212 Conn. 223, 232, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990). "Whether the defendant is entitled to a hearing pursuant to *Franks* v. *Delaware*, [supra, 154], is a mixed question of law and fact that [is reviewable] on appeal." *State* v. *Bergin*, 214 Conn. 657, 662 n.4, 574 A.2d 164 (1990).

In the present case, the defendant is not contending that the affiants knowingly and intentionally included false statements in the affidavit.[4] Accordingly, we focus on whether the defendant first succeeded in making a substantial preliminary showing that the affiants, in reckless disregard for the truth, included a false statement in the affidavit.

We agree that Prue's testimony indicates that neither he nor the other affiant, at the time of the warrant

---

[4] The defendant, in his brief, states, "Clearly, in this case, the defendant is not claiming Officer Prue knowingly put false statements in his search warrant affidavit."

application, had personal knowledge that a sample of the defendant's blood had been drawn. Consequently, Prue's testimony indicates also that neither he nor the other affiant, at the time of the warrant application, had personal knowledge of the credentials of the individual who supposedly had drawn a sample of the defendant's blood. To the extent that the affidavit indicates otherwise—i.e., that Prue or the other affiant's personal knowledge provided the factual basis for those allegations—the defendant succeeded in making a substantial preliminary showing that the affidavit contains a false statement. We now consider whether the defendant succeeded in making a substantial preliminary showing that the affiants had demonstrated a reckless disregard for the truth in submitting the affidavit.

"[T]he test for determining whether an affiant's statements were made with reckless disregard for the truth is not simply whether the affiant acknowledged that what he [or she] reported was true, but whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." (Internal quotation marks omitted.) *United States* v. *Schmitz*, 181 F.3d 981, 986–87 (8th Cir. 1999); see also *United States* v. *Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (to prove reckless disregard for truth, defendant must establish that affiant "in fact entertained serious doubts as to the truth of his allegations").[5]

The affidavit in the present case is inartfully drafted. Its language and paragraph structure generate an ambiguity as to whether the factual basis for the affiants' statement, that a sample of the defendant's blood had

[5] We note that "[t]he *Franks* decision did not define 'reckless disregard for the truth,' other than to suggest that the standard required more than mere negligence on the part of the affiant." *United States* v. *Whitley*, supra, 249 F.3d 621.

been drawn and tested by an individual having certain credentials, was the personal knowledge of the affiants or was a combination of their training, experience and circumstances. Given that the affidavit also includes statements regarding the affiants' years of police service and prior relevant experiences, it can not reasonably be said that they wilfully or recklessly misled the court to conclude that the factual assertions contained in the affidavit were based, exclusively, on their personal investigation or reports from other police officers.

During the suppression hearing, Prue testified that, during the course of his employment as a police officer, he had responded to "a couple of hundred" motor vehicle accidents, including accidents resulting in head injuries. Prue testified that, upon his arrival at the scene, he had observed that the defendant was suffering from a head injury, from which he was bleeding slightly. He testified further that he had observed ambulance personnel attending to the defendant at the scene and had watched as they placed the defendant into the ambulance and departed. Finally, Prue testified that, on the basis of the defendant's injuries, he had assumed that a sample of the defendant's blood had been drawn and tested.

The affidavit states that, at the time of the warrant application, Prue had over nine years of experience, had undergone specialized training and had "investigated numerous criminal and motor vehicle matters . . . ." It also states that the defendant smelled as if he had been consuming alcoholic beverages, that he was slurring his words and that he was unable to describe the events leading to the accident. The affidavit states further that there were empty beer cans on the floor of the defendant's vehicle.

On the basis of the record, we conclude that the defendant failed to make a substantial preliminary

showing that the affiants had entertained serious doubts as to the truth of their statements or had obvious reasons to doubt the accuracy of the information they reported. Accordingly, the court acted properly in denying the defendant's motion for a *Franks* hearing. See *United States* v. *Schmitz*, supra, 181 F.3d 986–87.[6]

The judgment is affirmed.

In this opinion MIHALAKOS, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the majority's conclusion that the trial court properly denied the defendant's motion for a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). At the outset, I note the statement in the affidavit that the defendant calls into question. Specifically, the affiants stated in the affidavit that "we have *personal knowledge* of the facts and circumstances hereinafter related as a result of our own investigative efforts and those of brother officers who have reported their findings to us." (Emphasis added.)

As the majority correctly states, the defendant must meet a three part test in order to be entitled to a *Franks*

---

[6] We note additionally that the notion of probable cause is a flexible concept. In determining whether to issue a search warrant, the issuing magistrate reviews the entire affidavit and the totality of its circumstances to determine whether probable cause exists for its issuance. *State* v. *Barton*, 219 Conn. 529, 544–46, 594 A.2d 917 (1991). Thus, the statement regarding the affiants' basis of belief is not pivotal to the vitality of the search warrant application if the magistrate can find probable cause from the totality of facts cited in the affidavit and reasonable inferences to be drawn from them. We have noted that the warrant affidavit in the present case is not a model of clarity regarding the basis of the affiants' knowledge and beliefs. Police officers as well as other law enforcement agents leave themselves vulnerable to considerable criticism when they submit warrant affidavits that arguably cast assumptions as to personal knowledge acquired through investigation. Although we do recognize that an officer's experience and training, together with the appropriate facts and inferences, may suffice as a substitute for personal knowledge in many instances, it is a better course for affiants, in the exercise of care, to ensure that the affidavit, as written, clearly distinguishes among various sources of support for the factual statements contained therein.

hearing to challenge the truthfulness of an affidavit supporting a search warrant. The defendant must make a substantial preliminary showing that (1) the affidavit contained a false statement, (2) the false statement was included knowingly and intentionally, or with reckless disregard for the truth, and (3) the statement was necessary to the finding of probable cause to issue the warrant. I conclude that the defendant has satisfied this test in the present case and is entitled to a *Franks* hearing.

With regard to the first prong of the test, it is clear, and indeed the majority concludes, that Prue's testimony establishes that the affiants did not have personal knowledge at the time of the warrant application that a sample of the defendant's blood had been drawn.

With regard to the second prong of the test, I conclude that the affiants did include this statement with reckless disregard for the truth. As the majority states, the test for reckless disregard for the truth requires a showing that the affiants entertained serious doubts as to the truth of their statement or had obvious reasons to doubt the accuracy of the information reported.

At this point, I want to call attention to a point of confusion in this case. Specifically, I note that the "statement" or "information reported" that the defendant takes issue with is the affiants' statement that they had personal knowledge of the facts contained in the affidavit. It is essential to distinguish the statement that the defendant challenges, that the affiants had personal knowledge of what they reported, from the facts themselves that the affiants did report. This is essential in the present case because the law and the facts become confusing since the legal test for reckless disregard for the truth requires a showing that the affiants entertained serious doubts as to the truth of their statement or had obvious reasons to doubt the accuracy of the information reported. It would be incorrect, therefore, to shift

the focus to assessing the truth of the underlying facts alleged in the affidavit rather than the truthfulness of the assertion that the affiants had *personal knowledge.*

Returning to the second prong, I conclude that the defendant has met this test because Prue's testimony clearly reveals that at no time prior to the warrant application did the affiants have any personal knowledge of the facts related in the affidavit, nor did they make any effort to obtain such knowledge. On the basis of this testimony, I must conclude that the affiants entertained serious doubts as to the truth of their statement that they had personal knowledge of the facts related in the affidavit. No other conclusion is plausible.

For the same reasons stated previously, I conclude that the affiants had obvious reason to doubt the accuracy of the information reported in the affidavit regarding personal knowledge. With Prue's admission that the police did not have personal knowledge that a blood sample had been taken, the affiants had an obvious reason to doubt the accuracy of their statement that they did have personal knowledge.

With regard to the last prong, I conclude that the statement that the affiants had personal knowledge was necessary to the finding of probable cause to believe that a blood sample would be at the hospital. If this statement is removed from the warrant application, the only statement supporting the conclusion that a blood sample was taken, or even existed, would be the affiants' statement that they have experience in law enforcement. On the basis of this statement alone, the court's conclusion that there is probable cause to believe that a blood sample was taken and exists could rest only on the police officers' belief that such samples have been taken because their experience reveals that blood samples have been taken in the past under similar circumstances.

Unless the affidavit was presented with affirmative personal knowledge that such a sample was taken and exists, a judge could not find probable cause to search for and seize an item the existence of which is unknown. Warrant applications must not be granted to provide the police with an opportunity to engage in a fishing expedition for evidence the existence of which is in the realm of speculation. The problem with this warrant is not lack of clarity but, rather, lack of truthfulness and accuracy.

Because the defendant has satisfied all three elements of the applicable test, the trial court improperly denied him a *Franks* hearing. Accordingly, I would reverse the judgment of the trial court.