# STATE OF CONNECTICUT *v.* MARK P. KUNCIK
## (AC 33468)

DiPentima, C. J., and Bear and West, Js.

Argued October 23, 2012—officially released March 12, 2013

*John C. Drapp III*, assigned counsel, with whom, on the brief, was *Joseph A. Jaumann*, assigned counsel, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Maureen Platt*, state's attorney, and, on the brief, *Daniel H. Miller*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Mark P. Kuncik, appeals from the judgments of conviction, rendered after a jury trial, of interfering with a police officer in violation of General Statutes § 53a-167a (a), operating a motor vehicle while his license was suspended in violation of General Statutes § 14-215 (a) and reckless driving in violation of General Statutes § 14-222 (a).[1] On appeal, the defendant claims that the trial court abused its discretion in permitting him to proceed to trial as a self-represented party and, during oral argument in this court, he sought to have his cases remanded to the trial court for a competency hearing under this court's supervisory powers.[2] We decline to exercise our supervisory powers and, accordingly, affirm the judgments of the trial court.

This case originated from a motor vehicle stop by state police Trooper Justin Rheiner, which occurred

---

[1] The judgment file has a scrivener's error and lists General Statutes § 14-222a (a) (1) as the operative section for reckless driving. Section 14-222a, however, concerns negligent homicide with a motor vehicle, which was not at issue in the present case. At all relevant times, § 14-222 (a) was the operative section for reckless driving.

[2] We note, however, that in his brief the defendant originally sought remand of his cases to the trial court for a new trial with the assistance of counsel.

in the early morning of August 21, 2009, on Route 8 northbound in Watertown. The jury reasonably could have found the following facts. The defendant, whose license was under suspension, was the operator of the vehicle, which had been traveling at ninety-three miles per hour. During the stop, the defendant was irate and noncompliant with Rheiner, who, as a consequence thereof, requested backup and drew his gun. When other officers arrived, the defendant was removed from the vehicle and subsequently placed under arrest after refusing to perform field sobriety tests.

The defendant was charged by substitute amended informations with one count of interfering with a police officer in violation of § 53a-167a (a), one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1), one count of operating a motor vehicle while his license was suspended in violation of § 14-215 (a) and one count of reckless driving in violation of § 14-222 (a).[3] During the course of pretrial proceedings, the defendant was canvassed by multiple judges on numerous occasions about proceeding as a self-represented party, and he continually elected to proceed as such with standby counsel. The defendant pleaded not guilty to all charges. A jury trial followed on March 28 and 29, 2011. The defendant was found guilty of interfering with a police officer, operating a motor vehicle while his license was suspended and reckless driving. The defendant was found not guilty of operating a motor vehicle while under the influence of intoxicating liquor or drugs. Thereafter, the trial court

---

[3] The applicable substitute amended information has a scrivener's error and lists § 14-222a (a) (1) as the operative section for reckless driving. Section 14-222a, however, concerns negligent homicide with a motor vehicle, which was not at issue in the present case. Again, at all relevant times, § 14-222 (a) was the operative section for reckless driving. See footnote 1 of this opinion.

rendered judgments in accordance with the jury verdicts and sentenced the defendant to a total effective prison term of one year, execution suspended after sixty days, with three years probation. This appeal followed.

The defendant claims that the court abused its discretion in permitting him to proceed to trial as a self-represented party because he was not competent to conduct the trial proceedings without the assistance of counsel. In particular, the defendant argues that his pattern of behavior and his comments during the course of the pretrial proceedings and, ultimately, the trial demonstrated that he was not competent to represent himself and that he did not adequately grasp the issues pertinent to the proceedings.[4] This claim is not properly

---

[4] In his brief, the defendant highlights his "pattern of behavior" and his "comments." For example, during the motor vehicle stop, the defendant called 911 and, after his arrest, the defendant stated to Rheiner: "I got you on false arrest, kidnapping, extortion, racketeering, false arrest, treason. I got you on all those charges." At a pretrial hearing, the defendant stated: "I'm going to name [the prosecutor] as a coconspirator to the kidnapping, fraud, extortion and racketeering." With respect to the charges set forth against him, the defendant repeatedly contested whether he was a person as defined under our motor vehicle statutes. The defendant also repeatedly contested whether he was driving at the time of the motor vehicle stop. In particular, during his cross-examination of Rheiner, the defendant claimed that he was not driving but was "traveling, by right." In general, the defendant stated: "[N]one of these charges apply to me. . . . I have no contract with the state whatsoever." He further stated that he was not going to lose because the case "would be an instant mistrial in my status."

During jury selection, the defendant asked the prospective jurors only if they paid income taxes. With respect to one prospective juror in particular, the defendant stated that he wanted him on the jury "because it would be an instant mistrial" as the prospective juror worked for the state. The defendant repeatedly contested the spelling of his name set forth in the informations simply because it was capitalized. The defendant also continually sought the dismissal of his case on various grounds. In particular, at a pretrial hearing, the defendant stated: "This is title 4, United States Code 1, United States flag of peace. This is a common-law hearing pursuant to Army regulations 840-10, chapter 2-1 A and B. . . . Sheriff or bailiff . . . could you please take and discharge this case as I've waited here an hour and all parties have failed to appear before this court." The defendant reiterated, at the start of his trial, that the bailiffs did not discharge his case. Again, at trial, during his cross-examination of Rheiner, the defendant sought to

preserved, and the defendant did not seek review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. Rather, during oral argument in this court, the defendant sought to have his cases remanded to the trial court for a competency hearing under this court's supervisory powers.[5] We decline to exercise our supervisory powers.

"Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason[s] which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration

have his case dismissed because he believed Rheiner confessed to committing a felony by bringing him to court. When the defendant proceeded with his defense, he attempted to call to the witness stand the state's attorney prosecuting the case. After the court denied this request, the defendant took the witness stand in his own defense and offered the following:

"I know I didn't do any wrong. My rights were taken away from me. I was kidnapped—that's what I believe—by the police officer. I believe the officer also perjured himself and lied on the [witness] stand here and nothing was done about it. The police officer confessed to practicing medicine without a license, which is a felony in the state of Connecticut, in bringing me here today. He said I was a person, and that's not true. And I have the definition of that that I brought. It's right what I'm being charged with. And I'm just trying to stand up for my constitutional rights and yours. That's why I'm here today."

[5] We note that, during oral argument in this court, the defendant clarified that he does not challenge any of the court's canvasses or that his decision to waive his right to counsel was knowingly and intelligently made.

of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 518 n.23, 973 A.2d 627 (2009).

"Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Additionally, [i]n certain instances, dictated by the interests of justice, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been raised appropriately under the *Golding* or plain error doctrines." (Citation omitted; internal quotation marks omitted.) *State* v. *Elson*, 125 Conn. App. 328, 361, 9 A.3d 731 (2010), cert. granted on other grounds, 300 Conn. 904, 12 A.3d 572 (2011).

The controlling case in this area, and the case relied upon by the defendant, is *State* v. *Connor*, supra, 292 Conn. 483. In *Connor*, our Supreme Court established that, in accordance with precedent from the United States Supreme Court and pursuant to its supervisory authority over the administration of justice, "we do not believe that a mentally ill or mentally incapacitated defendant who is competent to stand trial *necessarily* also is competent to represent himself at that trial. Accordingly . . . we conclude that, upon a finding that a mentally ill or mentally incapacitated defendant is competent to stand trial and to waive his right to counsel at that trial, the trial court must make another determination, that is, whether the defendant also is competent to conduct the trial proceedings without counsel." (Emphasis in original.) Id., 518–19; see also *Indiana* v. *Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). In doing so, our Supreme Court recognized that such a conclusion is not constitutionally mandated; see *State* v. *Connor*, supra, 528 n.28; but that, in accordance with *Edwards*, the court was "free

to adopt for mentally ill or mentally incapacitated defendants who wish to represent themselves at trial a competency standard that differs from the standard for determining whether such a defendant is competent to stand trial." Id., 517.

Ultimately, in *Connor*, our Supreme Court remanded that case for a determination by the trial court as to whether the defendant, at the time of trial, was competent to conduct trial proceedings by himself, notwithstanding any mental disability, "[b]ecause *Edwards* had not been decided prior to the conclusion of the trial [and the trial court] had no alternative . . . but to permit the defendant to represent himself once it was determined that he was competent to stand trial." (Citation omitted.) Id., 528. Our Supreme Court further noted that "[o]ther courts have adopted this approach when . . . the trial of a mentally ill defendant had been completed *before Edwards* was decided." (Emphasis added.) Id., 528 n.30.

The defendant claims that he was not competent to represent himself pursuant to the standard set forth in *Connor* and seeks to have his cases remanded to the trial court for a competency hearing under this court's supervisory powers. Although our Supreme Court in *Connor* established, pursuant to its supervisory powers, the heightened standard for competency in order for a defendant to represent himself or herself, our Supreme Court remanded that case "[b]ecause *Edwards* had not been decided prior to the conclusion of the trial [and the trial court] had no alternative . . . but to permit the defendant to represent himself once it was determined that he was competent to stand trial." (Citation omitted.) Id., 528.

All the proceedings in the present case occurred *after* both *Edwards* and *Connor*. The court was required to make a determination under the heightened standard

set forth in *Connor* and, although the record does not reveal that the court ever expressly found that the defendant was competent to represent himself under such a standard, "the court is presumed to know the law and apply it correctly to its legal determinations." *Iacurci* v. *Sax*, 139 Conn. App. 386, 396, 57 A.3d 736 (2012). The defendant was canvassed in depth by multiple judges on numerous occasions and the court repeatedly permitted the defendant to proceed as a self-represented party with standby counsel.[6] In light of these considerations and the record in the present case, we find that this is not the "rare circumstance" where our supervisory powers may be invoked and, therefore, we decline to do so.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] In *Connor*, our Supreme Court indicated that "the trial court . . . is best able to make [such a] fine-tuned mental capacity [decision], tailored to the individualized circumstances of a particular defendant . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Connor*, supra, 292 Conn. 528–29.