******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TERRANCE EASTON
(AC 35112)

Lavine, Bear and Borden, Js.

*Argued March 18—officially released August 19, 2014*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Lawrence L. Hauser, judge trial referee [motion to suppress]; Devlin, J. [judgments].)

*Craig A. Sullivan*, assigned counsel, for the appellant (defendant).

*Emily D. Trudeau*, deputy assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Terrance Easton, appeals from the judgments of conviction rendered by the trial court after his entry of three conditional pleas of nolo contendere pursuant to General Statutes § 54-94a following the court's denial of his motion to suppress both a fingerprint record and an analysis of his DNA.[1] In this appeal, the defendant claims that the trial court improperly denied his motion to suppress because: (1) the identifying information was confidential under General Statutes § 54-76*l* and could not be released without a court order; (2) his DNA was gathered in violation of his fifth amendment right against self-incrimination; and (3) he met the necessary burden of showing that a warrant affidavit contained a falsehood or material omission as part of a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We affirm the judgments of the trial court.

The defendant was arrested on July 15, 2010, and was charged with possession of a controlled substance. He subsequently was charged after arrest in two informations, each involving a count of home invasion, a count of sexual assault, and a count of burglary. The Bridgeport Police Department identified the defendant through a fingerprint record obtained from the Federal Bureau of Investigation (FBI). The defendant filed a motion to suppress the fingerprint identification and DNA sample taken by a buccal swab as part of his initial arrest. The defendant then amended the motion to suppress to allege a *Franks* violation. The trial court rendered an oral decision denying the motion to suppress. Following the court's denial of the defendant's motion to suppress, the defendant entered conditional pleas of nolo contendere to each of the three dockets of charges pursuant to § 54-94a. The court rendered judgments encompassing all charges against the defendant on July 27, 2012. This appeal followed.

The following facts and procedural history are relevant to the present case. On July 11, 2010, the Bridgeport Police Department processed the scene of a home invasion and sexual assault committed by an unknown perpetrator. The police believed the incident was likely linked to a similar home invasion and sexual assault that had occurred on March 28, 2010, also committed by an unknown perpetrator. The investigating officers collected latent fingerprints from a windowsill of the victim's apartment and sent them to the state police forensic laboratory for processing. John Brunetti, a fingerprint examiner at the state police forensic laboratory, entered the fingerprints into the Connecticut Automated Fingerprint Identification System. He discovered that the fingerprints recovered from the crime scene matched those of an individual in the database, who could only be identified by a state identification number. Brunetti contacted James Viadero, a captain

in the Bridgeport Police Department, and provided him with the state identification number. Brunetti told Viadero, however, that he could not release the identity of the individual whose fingerprint record matched the fingerprints from the crime scene because the number was attached to a youthful offender file. Brunetti informed Viadero that, pursuant to a policy of the state police forensic laboratory, the information related to a youthful offender—including the identity of the offender—could not be released without a court order.

Instead of seeking a court order, Viadero contacted Lisa Skelly, a special agent with the FBI, to obtain the identity of the individual. Viadero provided the state identification number to Skelly, who entered it into the FBI's criminal justice information system and received a match along with a fingerprint record. The FBI records matched the state identification number to the defendant. The police prepared a search and seizure warrant for the defendant's fingerprints to confirm the match with the latent fingerprints taken from the July 11, 2010 crime scene. When the police located the defendant on July 15, 2010, he was in possession of marijuana. He was arrested and charged with possession of a controlled substance. As part of the booking process, the police, after having procured a warrant to obtain the defendant's fingerprints, took his fingerprints and secured a DNA sample by buccal swab. Testing revealed that the defendant's DNA matched DNA samples taken at both the March 28, 2010 and July 11, 2010 crime scenes.

The defendant was charged in separate informations. The court, *Hauser, J.*, heard evidence at the hearings on both the motion to suppress and the *Franks* claim. The court determined that the defendant had no liberty interest or reasonable expectation of privacy in the confidentiality of his juvenile offender fingerprint records. The court then stated that in the event there was a liberty interest or reasonable expectation of privacy, the doctrine of inevitable discovery would nevertheless have applied to the police department's seizure. The court also found that the defendant voluntarily had consented to giving a DNA sample by buccal swab and thus waived any right to object to the DNA sample. With respect to the *Franks* claim, the court concluded that the defendant had not met his burden of demonstrating by a preponderance of the evidence that there was a falsehood or material omission in the warrant affidavits. Accordingly, the court, in an oral ruling, denied the defendant's motion to suppress.

The defendant thereafter entered a conditional plea of nolo contendere to each of the charges in the three informations. The court, *Devlin, J.*, sentenced the defendant to a total effective term of forty years of incarceration, suspended after twenty-eight years, followed by thirty-five years of probation. This appeal followed.

## I

The defendant first claims that the court improperly denied his motion to suppress on the ground that he did not have a reasonable expectation of privacy in his youthful offender records. He argues that § 54-76$l^2$ confers a right of confidentiality as to the fingerprint records of youthful offenders, which, in turn, creates a reasonable expectation of privacy and, therefore, bars the release of such records in the absence of either a warrant obtained pursuant to the fourth amendment or procedural due process pursuant to the fourteenth amendment.[3] We disagree.

We first set forth the standard of review pertaining to a motion to suppress. "[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 92, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

## A

We first address the defendant's fourth amendment argument. The defendant argues that the trial court improperly denied his motion to suppress because he had a reasonable expectation of privacy in his juvenile offender fingerprint records released by the FBI, as conferred by § 54-76$l$.[4] We disagree.

"The touchstone to determining whether a person has [the ability] to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications. . . . In order to meet this [threshold inquiry] . . . a two-part subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the information searched]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances. . . . Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing . . . ." (Internal quotation marks omitted.) *State* v. *Kalphat*, 285 Conn. 367, 374–75, 939 A.2d 1165 (2008).

Section 54-76*l* controls the confidentiality of youth offender records. The defendant relies on the part of the statute that provides, inter alia, that "[t]he records or other information of a youth . . . including fingerprints, photographs and physical descriptions, shall be confidential and shall not be open to public inspection or be disclosed except as provided in this section . . . ."[5] General Statutes § 54-76*l* (a). Section 54-76*l* read in its entirety, however, does not apply to federal agencies, and therefore does not create a reasonable expectation of privacy as to the defendant's fingerprint records held by the FBI.

As a state law, the confidentiality restrictions under § 54-76*l* do not extend to those records held by the FBI because no language in the statute provides for that extension. "When construing a statute . . . we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Adams*, 308 Conn. 263, 270, 63 A.3d 934 (2013).

The text of § 54-76*l* is not ambiguous as to its applicability to federal agencies. The text explicitly states that only "fingerprints . . . submitted to the *State* Police Bureau of Identification" shall be considered confidential. (Emphasis added.) General Statutes § 54-76*l* (a). Nowhere in the text of the statute is there mention of any applicability to the *Federal* Bureau of Investigation. The defendant has not demonstrated any textual evidence of such, and we therefore decline to read an ambiguity into the statute. We thus conclude that the court did not violate the defendant's fourth amendment rights when it denied his motion to suppress.[6]

B

We next turn to the defendant's procedural due process argument.[7] The defendant argues that language of our Supreme Court conferring procedural due process rights on juvenile offender status; see *State* v. *B.B.*, 300 Conn. 748, 17 A.3d 30 (2011); *State* v. *Angel C.*, 245 Conn. 93, 715 A.2d 652 (1998); *State* v. *Matos*, 240 Conn. 743, 694 A.2d 775 (1997); results in his having a vested liberty interest in the confidentiality of his fingerprint records. The defendant argues that, pursuant to that liberty interest, procedural due process necessitates

that the police obtain a court order to gain access to his fingerprint records, as prescribed by § 54-76*l*. He also argues that due process required that the police provide him with notice that his records were being sought and an opportunity to contest the search. We find all of these arguments unavailing.

"In reviewing a procedural due process claim, we must *first* determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due . . . ." (Emphasis added; internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 508, 72 A.3d 367 (2013). Only if a liberty interest is established, then, "[w]hether the defendant's rights to due process were violated is governed by the balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)." *Frauenglass & Associates, LLC* v. *Enagbare*, 149 Conn. App. 103, 110, 88 A.3d 1246 (2014). We conclude that the defendant had no liberty interest in his juvenile fingerprint records. Our Supreme Court has noted that "[a]ny [special treatment] accorded to a juvenile because of his [or her] age with respect to proceedings relative to a criminal offense *results from statutory authority, rather from any inherent or constitutional right.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *B.B.*, supra, 300 Conn. 752–53; *State* v. *Angel C.*, supra, 245 Conn. 104. The mere mention of talismanic language such as "confidentiality," even when coupled with a procedure for disclosure to the public, does not create a constitutional right.

Although our Supreme Court has recognized confidentiality from public disclosure as one of the benefits granted as part of juvenile offender status; see, e.g., *State* v. *B.B.*, supra, 300 Conn. 754; *State* v. *Fernandez*, 300 Conn. 104, 123, 12 A.3d 925 (2011); it has never recognized that a liberty interest exists in maintaining the confidentiality of fingerprint records. The United States Supreme Court, the United States Court of Appeals for the Second Circuit, and the Connecticut appellate courts have similarly not addressed whether such an interest exists. Those few other jurisdictions that have examined the confidentiality of juvenile records have uniformly rejected the notion of a liberty interest in those records. See, e.g., *United States* v. *T.E.S.*, United States Court of Appeals, Docket No. 98-4423, 1998 WL 774144, *3 (4th Cir. November 6, 1998) (rejecting procedural due process interest in confidential juvenile records) (decision without published opinion, 165 F.3d 913 [4th Cir. 1998]); *United States* v. *Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (same), cert. denied, 455 U.S. 923, 102 S. Ct. 1282, 71 L. Ed. 2d 465 (1982); *Doe* v. *Madison*, Docket No. 3:09-CV-2005 (JCH), 2010 WL 3829186, *7 (D. Conn. September 22, 2010) (same). We find the analysis set forth in these decisions convincing.

A conferral of confidentiality by statute does not create a liberty interest in the continuity of that confidentiality. The United States Court of Appeals for the Third Circuit has noted that "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby [ac]quire a federal constitutional dimension." (Citations omitted; internal quotation marks omitted.) *United States* v. *Jiles*, supra, 658 F.2d 200. Section 54-76*l*, although a "safeguard . . . helpful to the state in ensuring that such records [will] not be released to the general public, [does] not create a [due process] interest on behalf" of the defendant. Id.

This reasoning is particularly compelling, given the specific procedural due process that our Supreme Court has provided juvenile offenders. Our Supreme Court has articulated that only the designation of "juvenile offender" *status* was a liberty interest subject to due process. "[I]f a statute vests a juvenile with the right to juvenile status, then that right constitutes a liberty interest, of which the juvenile may not be deprived without due process; i.e., notice and a hearing." (Internal quotation marks omitted.) *State* v. *B.B.*, supra, 300 Conn. 753; see also *State* v. *Angel C.*, supra, 245 Conn. 103–104; *State* v. *Matos*, supra, 240 Conn. 749. That status is expressed in a variety of benefits, including segregation from other defendants older than age eighteen; General Statutes § 54-76h; more lenient sentencing; General Statutes § 54-76j; determination of delinquency rather than a criminal conviction; General Statutes § 54-76k; and erasure of records after the juvenile becomes twenty-one years of age, provided that he has not been convicted of certain felonies prior to attaining age twenty-one. General Statutes § 54-76o. Those cases cited by the defendant speak only to the termination of *all* the benefits of being a juvenile in the criminal justice system, in violation of due process rights for juveniles set forth by the United States Supreme Court. See *State* v. *B.B.*, supra, 753; see also *Kent* v. *United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). A due process right that arises from a person's status as a juvenile does not translate automatically to a liberty interest in the confidentiality of records relating to that juvenile. The defendant's procedural due process claim therefore fails.

II

We next address the defendant's claim that the DNA sample, taken by buccal swab subsequent to his arrest but before he was advised of his fifth amendment rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 479–80, 86 S. Ct. 1602, 16 L. E.2d 694 (1966), violated his fifth amendment privilege against self-incrimination. The trial court denied the defendant's motion to suppress the results of the DNA sample analysis, finding that the defendant had consented to the administration of the swab. We agree that the court properly denied the

defendant's motion to suppress, but for different reasons.

The following additional facts are relevant to this claim. Following the defendant's arrest on July 15, 2010, the Bridgeport police served a warrant on him to collect his fingerprints. At the same time, Kimberly Biehn, a detective with the Bridgeport Police Department, took a DNA sample by means of a buccal swab. Biehn testified at a hearing before the court that the defendant consented to the DNA collection. Biehn utilized two swabs to collect saliva from the defendant and placed them within a kit for processing. Following the collection, the defendant signed a form waiving his *Miranda* rights. On July 19, 2010, a warrant was prepared to test the DNA on the defendant's buccal swab. The swab was subsequently analyzed and determined to contain DNA matching the DNA samples taken at the March 28, 2010 and July 11, 2010 crime scenes.

"The Self-Incrimination Clause of the Fifth Amendment provides that no person . . . shall be compelled in any criminal case to be a witness against himself. Although the text does not delineate the ways in which a person might be made a witness against himself . . . we have long held that the privilege does not protect a suspect from being compelled by the State to produce real or physical evidence. . . . Rather, the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Pennsylvania* v. *Muniz*, 496 U.S. 582, 588–89, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990). The operative question this court must address is whether the defendant's DNA sample is testimonial in nature.

The test for whether an act is testimonial is well settled. "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate to a factual assertion or disclose information." *Doe* v. *United States*, 487 U.S. 201, 210, 108 S. Ct. 2341, 101 L. Ed. 2d 184 (1988). We conclude that DNA samples taken by a buccal swab are not a form of communication, but rather, a form of physical evidence that is not testimonial in nature.

The defendant's DNA sample is analogous to a blood sample, which the United States Supreme Court has concluded is not communicative or testimonial in nature. *Schmerber* v. *California*, 384 U.S. 757, 765, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). Blood samples are not considered testimonial because, beyond providing the blood, a person's actions or statements are "irrelevant to the results of the test, which depend on [laboratory] analysis and on that alone." Id. Buccal swab evidence, like "blood test evidence, although an incriminating product of compulsion, was neither [the defendant's] testimony nor evidence relating to some

communicative act or writing by the [defendant] . . . ." Id. We conclude that, in the taking of the defendant's DNA, "[n]ot even a shadow of testimonial compulsion upon or enforced communication by the [defendant] was involved either in the extraction or in the chemical analysis" and the procurement is therefore not governed by the fifth amendment. Id.

### III

The defendant finally claims that the trial court improperly determined that he had failed to meet his burden of showing that the warrant affidavit contained a falsehood or material omission. See *Franks* v. *Delaware*, supra, 438 U.S. 171. The defendant claims that, because the Bridgeport police were aware of the confidentiality restrictions of § 54-76*l*, they intentionally or recklessly omitted the restrictions from the warrant affidavits for seizure of the defendant's fingerprints and the multiple warrants for his arrest. Consequently, he claims that the warrants and all associated evidence— including the fingerprints and the buccal swab evidence—should have been suppressed. We agree with the court that the defendant failed to meet his burden of proof.

The following additional facts are relevant to this claim. During the preparation of the search warrant for the defendant's fingerprints, the arrest warrant, and the warrant for the examination of the DNA sample on the buccal swab, the affiant officers included information about the latent fingerprints and palm prints found at the July 11, 2010 crime scene. The warrant affidavits included a statement informing the reviewing court that the state identification number received from the state Automated Fingerprint Identification System was tied to a youthful offender file. The affidavits did not include language, however, informing the court that the youthful offender files were to be kept confidential under state statute, but instead, only stated that "due to the youthful offender status the Connecticut State Police Lab, [could not] confirm the identification of [the] individual . . . ."[8]

"In *Franks* v. *Delaware*, [supra, 438 U.S. 155–56] . . . the United States Supreme Court held that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, *and* if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (Emphasis in original; internal quotation marks omitted.) *State* v. *Weinberg*, 215 Conn. 231, 237, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).[9]

When reviewing a claim pursuant to a *Franks* hearing, "the [United States] Supreme Court has reaffirmed the

longstanding rule that there is an underlying presumption of validity with respect to the affidavit supporting a warrant." *State* v. *Dolphin*, 195 Conn. 444, 457, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). Whether there were falsehoods or material admissions in a warrant affidavit for the purposes of a *Franks* hearing is a "mixed question of law and fact that [receives plenary review] on appeal." (Internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 696, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). "Not all omissions . . . even if intentional, will invalidate an affidavit. . . . In fact, an affiant may omit facts that he believes to be either immaterial or unsubstantiated." (Citations omitted.) *State* v. *Bergin*, 214 Conn. 657, 666, 574 A.2d 164 (1990).

To void a warrant, the defendant is required to demonstrate the "allegation of perjury or reckless disregard . . . by a preponderance of the evidence . . . ." *Franks* v. *Delaware*, supra, 438 U.S. 156. "[T]he test for determining whether an affiant's statements were made with reckless disregard for the truth is not simply whether the affiant acknowledged that what he [or she] reported was true, but whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." (Internal quotation marks omitted.) *State* v. *Thatcher*, 71 Conn. App. 516, 526, 802 A.2d 908, cert. denied, 261 Conn. 940, 808 A.2d 1134 (2002).

During the *Franks* hearing, the defendant argued that any mention in the affidavits of the state identification number associated with him was misleading to the reader in a way that obfuscated the allegedly illegal identification process under the confidentiality restrictions of § 54-76*l*. This argument presupposes that the defendant's analysis of the constitutional protections of § 54-76*l* was not only accurate, but that the Bridgeport Police Department necessarily would have had the clairvoyance to anticipate such an interpretation despite the fact that our courts had not interpreted such a claim. Inasmuch as we have rejected the defendant's interpretation of § 54-76*l*; see part I of this opinion; we conclude that the affidavits contained no material omissions or falsehoods. Moreover, the court is presumed to know the law, and does not need its inclusion within an affidavit. See *State* v. *Kunick*, 141 Conn. App. 288, 295, 61 A.3d 561, cert. denied, 308 Conn. 936, 66 A.3d 498 (2013). Consequently, the defendant's claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The trial court had consolidated three informations against the defendant. In an information dated July 16, 2010, the defendant was charged with possession of a controlled substance in violation of General Statutes § 21a-279 (c); in an information dated July 22, 2010, the defendant was charged with burglary in the first degree in violation of General Statutes § 53a-101

(a) (1), aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1) and home invasion in violation of General Statutes § 53a-100aa; in an information dated October 17, 2011, the defendant was charged with burglary in the first degree in violation of General Statutes § 53a-101 (a) (3), home invasion in violation of General Statutes § 53a-100aa, sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).

[2] General Statutes § 54-76*l* provides in relevant part: "(a) The records or other information of a youth . . . including fingerprints, photographs and physical descriptions, shall be confidential and shall not be open to public inspection or be disclosed except as provided in this section, but such fingerprints, photographs and physical descriptions . . . of a person subsequently adjudged, or subsequently presumed or determined to be eligible to be adjudged, a youthful offender shall be retained as confidential matter in the files of the bureau and be opened to inspection only as provided in this section. . . .

"(b) The records of any such youth, or any part thereof, may be disclosed to and between individuals and agencies, and employees of such agencies, providing services directly to the youth . . . .

"(c) The records of any such youth, or any part thereof, may be disclosed upon order of the court to any person who has a legitimate interest in the information and is identified in such order. Records or information disclosed pursuant to this subsection shall not be further disclosed. . . ."

[3] The defendant additionally claimed violations of article first, §§ 7 and 8, of the constitution of Connecticut. The defendant failed to provide a separate analysis of his claims under the constitution of Connecticut. We therefore decline to review those claims. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[4] The defendant does not challenge the disclosure of his fingerprint record by the state to the FBI. Although the record does not reflect the circumstances under which the FBI received the defendant's fingerprints, we need not address the issue because it was not raised as part of the original motion to suppress or on appeal; *see Brown* v. *Employer's Reinsurance Corp.*, 206 Conn. 668, 671 n.3, 539 A.2d 138 (1988); and he specifically disclaimed any such challenge in oral argument before this court.

[5] At the time of the incidents underlying the present case, the statute did not set forth an exception with respect to the release of records for law enforcement officials conducting criminal investigations. Following the defendant's arrest, § 54-76*l* (b) was amended by No. 10-180, § 5, of the 2010 Public Acts to exempt law enforcement officials and prosecutorial officials conducting legitimate criminal investigations from the confidentiality requirements. As it is not clear that the amendment was designed to apply retroactively, we view the statute's language as it applied to the defendant at the time of his arrest. *See State* v. *Graham*, 56 Conn. App. 507, 510, 743 A.2d 1158 (2000).

[6] Because we have rejected the defendant's fourth amendment claim in the present matter, we need not address his claim that the trial court improperly determined that the doctrine of inevitable discovery applied to his juvenile records.

[7] We note, as pointed out by the state, that it was not clear whether the defendant was attempting to argue a *procedural* or *substantive* due process claim. Nevertheless, we believe that after examining the arguments before the trial court that the procedural due process issue was raised and preserved adequately for appeal, and that the defendant adequately briefed the claim.

[8] The full text of each of the three affidavits prepared as part of the warrants served on the defendant all contain essentially identical language:

"On July 13, 2010 Detective Mark Graham brought the latent fingerprint lifts to the Connecticut State Police Forensic Lab for further analysis. John Brunetti of the Connecticut State Police Forensic Lab, a latent print examiner, entered the latent prints into [the] Automated Fingerprint Identification System (AFIS). An AFIS search resulted in the development of a viable candidate pertaining to the submissions . . . .

"Bridgeport Detectives were advised that due to the youthful offender status the Connecticut State Police Lab, cannot confirm the identification of this individual . . . and they would need a known set of [fingerprints], and palm prints from this individual to confirm the findings.

"Detectives were informed that the Federal Bureau of [Investigation] is able to run State ID numbers. Bridgeport Police Captain James Viadero contacted Special Agent Lisa Skelly of the FBI, and advised her of these

findings. On July 14, 2010, Captain Viadero received a fax from the FBI, that Connecticut State Police SPBI State ID . . . belongs to [the defendant] . . . ."

[9] In the present case, the state elected to waive the necessary preliminary showing, and the trial court held a full evidentiary hearing on the alleged *Franks* violation.